UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


EDDIE A. R.-C.,

        Plaintiff,

    v.                              Civil Action 2:25-cv-816
                                          Judge Algenon L. Marbley
COMMISSIONER OF SOCIAL           Magistrate Judge Chelsey M. Vascura
SECURITY,

        Defendant.


REPORT AND RECOMMENDATION

Plaintiff, Eddie A. R.-C. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security ("Commissioner") denying his

applications for a period of disability and disability insurance benefits ("DIB") and supplemental

security income benefits ("SSI"). This matter is before the undersigned for a Report and

Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's

Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 9).  For the

reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be

**OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

I.        BACKGROUND

Plaintiff protectively filed his DIB and SSI applications in December 2018, alleging

disability beginning October 1, 2014. (R. at 288–91, 292–98.) Those applications were denied

initially, on reconsideration, and by an Administrative Law Judge ("ALJ"). (*Id*. at 141–65.) The

Appeals Council subsequently remanded the matter for another hearing, which was held on

March 19, 2024, before ALJ Thomas Wang ("ALJ Wang"). Plaintiff, who was represented by council, and a vocational expert ("VE") appeared and testified. (*Id*. at 41–73.) On July 1, 2024, ALJ Wang issued a second unfavorable determination, which became final on May 22, 2025, when the Appeals Council declined review. (R. at 11–35, 1–6.)

Plaintiff seeks judicial review of that second unfavorable determination. He contends that ALJ Wang committed reversible error when evaluating prior administrative findings from state agency psychological reviewers. (Pl.'s Statement of Errors 8–11 ECF No. 11.) Specifically, he contends that ALJ Wang erred by failing to account for the reviewers' social interaction findings. (*Id*.) Defendant correctly contends that this contention lacks merit. (Def.'s Mem. in Opp'n 3–11, ECF No. 15.)

## II. THE ALJ'S DECISION

ALJ Wang issued the unfavorable determination on July 1, 2024. (R. at 11–35.) He initially determined that Plaintiff met the insured status requirements through September 30,

2

2015. (*Id*. at 16.) At step one of the sequential evaluation process,[1] ALJ Wang found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of October 1, 2014. (*Id*.) At step two, ALJ Wang determined that, for purposes of Plaintiff's DIB application, Plaintiff had no medically determinable impairments prior to December 10, 2018. For purposes of Plaintiff's SSI application, however, ALJ Wang determined that beginning December 10, 2018, Plaintiff had the following medically determinable impairments: left shoulder subacromial impingement, bursitis, superior labrum anterior to posterior (SLAP) tear, and subscapularis tear; attention deficit and hyperactivity disorder (ADHD); and affective, anxiety, and trauma-stressor related mental disorder. (*Id*. at 17.) At step three, ALJ Wang determined that, for purposes of the SSI application, Plaintiff did not have an impairment or

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 18.)

ALJ Wang then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> With respect to the claimant's application for supplemental security income filed on December 10, 2018, he has the residual functional capacity to perform medium work as defined in  20 CFR 416.967(c) except he is limited to frequent crawling and occasional overhead reaching (no limitation in reaching forward or laterally). He can perform simple 1 to 3 step tasks in a low stress job defined as requiring only occasional changes in the work setting, and the work must not be fast paced (limited to goal based production where the work is measured by end result, not pace work). He can occasionally interact with coworkers and supervisors but not interact with the public, and interactions are limited to the occasional straight forward exchange of information without negotiation, persuasion, conflict resolution, close team work, tandem work, or close over the shoulder supervision.

(*Id*. at 21.)

At step four, ALJ Wang determined that Plaintiff had no past relevant work. (*Id*. at 27.) Relying on VE's testimony at step five, ALJ Wang determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of hospital cleaner, industrial cleaner, auto detailer, mail clerk, merchandise marker, and routing clerk. (*Id*. at 28.) Accordingly, ALJ Wang determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*.)

## III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014)

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c).

(cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### IV.    ANALYSIS

As explained above, Plaintiff contends that ALJ Wang committed reversible error when evaluating social interaction limits found by state agency reviewing psychologists. (Pl.'s Statement of Errors 8–11, ECF No. 11.) The undersigned concludes that this contention lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions  . . . will be." 20 C.F.R. § 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. § 416.920c(c)(2).

---

[3] Because Plaintiff's applications were filed in 2018, they are subject to regulations governing applications filed after March 27, 2017.

Here, ALJ Wang summarized and discussed his evaluation of the findings from state agency reviewers, Irma Johnston, Psy.D., and Lisa Foulk, Psy.D.,[4] as follows:

> State agency reviewing psychologists Irma Johnston, PsyD, and Lisa Foulk, PsyD, assessed that the claimant could understand and recall simple 1 to 3 step tasks in settings where there was no demand for a fast pace and relate to others infrequently and superficially . . . .
>
> The assessment of Dr. Johnston and D. Foulk is only partly persuasive. The limitations associated with complexity, pace, and interaction are generally supported by Dr. Johnston and Dr. Foul's summary of the claimant's severe mental impairments and their cite to the relevant evidence of record, consistent with the above summarized evidence, which also documents limitations in such areas. However, the terms they used are relatively vague and not entirely vocationally appropriate terms. Accordingly, the undersigned has used "occasional" interactions with coworkers and supervisors, no interactions with the public, and, rather then using "superficial", limited interactions to the occasional straightforward exchange of information without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or close over the shoulder supervision. Further limitations are not supported by the above-summarized mental status examination findings, nor are they consistent with his ability to interact appropriately with various providers. Despite the claimant's reports of significant interaction difficulties and history of a couple of episodes of confrontation, he has displayed no difficulty interacting with providers, who routinely describe him as cooperative, and he even reported to Dr. Miller that he generally had gotten along with coworkers (6F/2). The undersigned that notes nowhere in the treatment or examining record is the terms "superficial" or "infrequent" used to describe necessary interaction limitations.

(R. at 26.)

As this discussion demonstrates, ALJ Wang concluded that Plaintiff was, in some respects, more limited than the reviewers. They found that Plaintiff could relate to "others" infrequently and superficially without any limits as to different categories of people. (R. at 87, 102–03, 116, 128.) (*Id*.) In contrast, ALJ Wang determined that Plaintiff was limited to interactions with coworkers and supervisors only, and that he could never interact with the public. (*Id*. at 26.)

---

[4] Plaintiff does not challenge ALJ Wang's evaluation of state agency reviewing psychologist, Kristen Haskins, Psy.D.

7

ALJ Wang also determined that the reviewers' findings were only partly persuasive because they relied on terms that were vague and not entirely vocationally appropriate. (*Id*.) Substantial evidence supports that determination. The reviewers found that Plaintiff could relate to others infrequently. (*Id*. at 87, 102–03, 116, 128.) The SSA regulations do not define the term "infrequent." *See Locatelli v. Soc. Sec. Admin*., No. 2:22-CV-00014, 2023 WL 4921505, at *6 (M.D. Tenn. Aug. 1, 2023), *adopted and aff'd sub nom*., 2023 WL 5538974 (M.D. Tenn. Aug. 28, 2023) (citing *Mitchell v. Berryhill,* No. 1:15-cv-168, 2017 WL 886494, at *2 (E.D. Tenn. Mar. 6, 2017) and *Wearner v. Comm'r of Soc. Sec*., No. 1:18-cv-28, 2019 WL 1938820, at *9 (E.D. Tenn. Apr. 15, 2019), *adopted and aff'd*, 2019 1929924 (E.D. Tenn. Apr. 30, 2019)). ALJ Wang thus limited Plaintiff to occasional interactions. (R. at 26.) "Occasional" is a defined term. SSR 83-10 (S.S.A. 1983), 1983 WL31251, at *5 (1983) (explaining that occasionally means "occurring from very little up to one-third of the time.")[5] Because Plaintiff does not challenge ALJ Wang's substitution of "occasional" for "infrequent," the undersigned need not determine if those terms are synonymous but notes that at least one court in this district has found that they are. *See Kevin A. v. Comm'r of Soc. Sec*., No. 1:22-CV-307, 2023 WL 4545164, at *14 (S.D. Ohio July 14, 2023).

ALJ Wang also explained that instead of using the term superficial, he limited Plaintiff to the "straightforward exchange of information without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or close over the shoulder supervision." (R. at 26.) After explaining that Plaintiff's limits included those qualitative restrictions, ALJ Wang

---

[5] Because Plaintiff does not challenge ALJ Wang's substitution of "occasional" for "infrequent," the undersigned does not determine if those terms are synonymous in the Social Security context but notes that at least one court in this district has found that they are. *See Kevin A. v. Comm'r of Soc. Sec*., No. 1:22-CV-307, 2023 WL 4545164, at *14 (S.D. Ohio July 14, 2023).

indicated that no greater limits were supported by or consistent with Plaintiff's generally unremarkable mental status examinations and his ability to interact appropriately with various healthcare providers. (*Id.*)

Substantial evidence supports those explanations. As ALJ Wang explained elsewhere in the determination, the record reflected "generally relatively unremarkable mental status exam observations, primarily related to mood and sometimes memory." (*Id.* at 25.) For instance, and as ALJ Wang pointed out, a mental status examination in 2019 found that although he had depressed mood, paranoia, and restlessness, Plaintiff's eye contact was average, and he had clear speech, full affect, logical thought processes, and average intelligence. (*Id.* at 23, 839–40.) In April 2022, Plaintiff's mood and affect were appropriate. (*Id.* at 24, 1616.) Findings from a January 2023 mental status examination were "substantially normal." (*Id.* at 25, 1580–82.) And in January 2024, Plaintiff's mental status examination was normal except for an anxious and depressed mood and mildly impaired judgment. (*Id.* at 25, 1602–05.)

The record also includes evidence demonstrating that Plaintiff did not have problems interacting with healthcare providers. As ALJ Wang noted, providers routinely described Plaintiff as "cooperative," "polite and cooperative," or "alert and cooperative." (*Id.* at 26, 419, 748, 791, 797, 822, 840, 864, 900, 902, 1147, 1151, 1157, 1164, 1171, 1178, 1185, 1193, 1200, 1207, 1214, 1221, 1229, 1236, 1243, 1250, 1250, 1258, 1265, 1272, 1279, 1286, 1293, 1300, 1307, 1311, 1319, 1323, 1327, 1374, 1566, 1573, 1579, 1587, 1595, 1603.) ALJ Wang also correctly noted that Plaintiff reported to a consultative examiner that he generally got along with coworkers. (*Id.* at 26, 849.) That same consultative examiner also described Plaintiff as "extremely well mannered," and "cooperative." (*Id.* at 849.)

9

Plaintiff nevertheless contends that ALJ Wang erred by substituting the series of qualitative limits for the reviewers' superficial limit because the ALJ failed to explain "where that definition came from." (Pl.'s Statement of Errors 9, ECF No. 11.) In so doing, Plaintiff seems to suggest that the limits that ALJ Wang included in Plaintiff's RFC were required to mirror a finding or a medical opinion. The Sixth Circuit has clarified, however, that limits included in an ALJ's RFC do not have to mirror limits found in a medical opinion or an administrative finding. *See Mokbel-Alijani v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."). *See also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (explaining that requiring an ALJ to base an RFC determination on medical opinions would transfer the statutory responsibility to determine if an individual is under a disability from an ALJ to a medical source).

And to be sure, the Sixth Circuit has acknowledged that a superficial interaction limit is a well understood work limitation. *See Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at *4 (6th Cir. June 20, 2023) (quoting *Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-410, 2021 WL 4905438, at *5 (S.D. Ohio Oct. 21, 2021) ("We find nothing wrong in the ALJ's use of the term 'superficial,' a 'well-recognized work-related limitation,' in the interrogatories to the vocational expert."). But this is not a case where an ALJ credited a medical opinion or finding that included a superficial interaction limit but then failed to include such a limit in the plaintiff's RFC or adequately explain its omission.

Instead, in this case, ALJ Wang determined that the reviewers' findings were only partly persuasive. (R. at 26.) He further determined that Plaintiff was more limited than the reviewers

with regard to the categories of persons with whom he could interact; converted the reviewers' infrequent limit to an occasional limit; and included in Plaintiff's RFC a series of qualitative limits instead of a superficial limit. (*Id*.) ALJ Wang also explained that no greater limits than the ones he assessed—including that series of qualitative limits—were warranted given the record evidence. (*Id*.) That was sufficient. *See Crystal Ann B. v. Comm'r of Soc. Sec.*, No. 2:25-CV-322, 2025 WL 2611969, at *6 (S.D. Ohio Sept. 10, 2025) (finding no error where ALJ discredited reviewers' superficial interaction limit because it was somewhat vague *and* because it was generally inconsistent with treatment records describing the plaintiff as pleasant and cooperative.) Plaintiff's contrary contentions lack merit.

## V.  RECOMMENDED DISPOSITION

Accordingly, for all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE